THE NORWALK GASLIGHT COMPANY *vs.* THE BOROUGH
OF NORWALK.

New Haven & Fairfield Cos., Oct. T., 1893. ANDREWS, C. J., CARPEN-
TER, TORRANCE, FENN and BALDWIN, Js.

A special defense to a complaint for negligence is insufficient which merely
avers facts tending to show the exercise of due and reasonable care upon
the part of the defendant, but which do not constitute, either separately
or collectively, any justification for the negligence charged, if, in fact,
such negligence existed. A paragraph of such special defense which
alleges that all the acts done by the defendant in the matter complained
of were necessary, and were done with reasonable care and without neg-
ligence on its part is, in legal effect, a mere denial of the averments of
the complaint, (which in this case the defendant had pleaded as its first
defense,) and therefore cannot serve to make a valid special defense of
one which otherwise is insufficient. Another paragraph of such special
defense alleged that the acts complained of were done by contractors
acting under contracts with the defendant which were advised by com-
petent counsel, and were not done by or under the direction or pro-
curement of the defendant. Held, that such averment was not to be
construed as an independent defense, the implied legal effect of which
would be to exempt the defendant from liability for negligence, but
rather in connection with the other paragraphs of the defense, as an
averment of reasonable care by the defendant in making such con-
tracts. Accordingly it was held, that the trial court erred in overrul-
ing the demurrer of the plaintiff to said special defense.

A municipal corporation is not liable upon a contract entered into on its
behalf by an unauthorized agent; but may, under certain circum-
stances, be liable upon the grounds of ratification and estoppel.

Therefore, when unauthorized agents of the defendant agreed that if the
plaintiff would look after, protect and repair its own gas pipes injured
during the construction of the defendant's sewers, the borough would
reimburse it for such expenses, and such contract was duly reported to
the court of burgesses, the body legally authorized to act for the de-
fendant in the matter, and such court was fully aware of all that had
been done and that the plaintiff was incurring expense in reliance upon
said agreement, it was held, that it then became the duty of the bor-
ough, acting through its court of burgesses, to deny the authority of
said agents, and that silence under these circumstances constituted as-
sent and estopped the defendant from afterwards denying its liability
under said agreement; and that the trial court erred in excluding evi-
dence offered by the plaintiff to prove these facts.

The defendant introduced certain contracts in evidence under which the
sewers were constructed, and claimed that the negligence complained
of by the plaintiff, if proved, was that of the independent contractors

for which the defendant was not liable. Held that the court correctly instructed the jury that these contracts did create the relation between the borough and the other parties thereto of employer and independent contractors, and that while such relation existed the defendant was not liable for the negligence of the contractors, unless it interfered with and assumed actual control over the work and the methods and means of its performance.

The court also correctly charged, in substance, that the employer, notwithstanding such relation, would still be liable if he caused the precise act to be done by the contractor which resulted in the injury complained of; but erred in failing to charge, as the case demanded, that the employer would also be liable when the act required to be done by the contractor is such as obviously exposes other persons or property to unusual peril.

Held that the operation of blasting with dynamite, which was the means used, in part, in the present case, is "intrinsically dangerous," and that the trial court should have taken judicial notice of that fact and left to the jury the question whether the work in its natural and reasonable execution called for such use of such intrinsically dangerous agency and means as would obviously expose the plaintiff's pipes to probable injury; and should also have instructed the jury that if it did, the defendant could not relieve itself from liability for an injury so caused, by reason of a contract with another to perform the work.

The court charged the jury that if the contractors employed by the defendant were unskillful and incompetent to perform the work, and the borough, knowing this, employed them, then the borough would be liable for their negligence. Held, that this language was erroneous and imposed upon the defendant a too limited measure of liability; as the defendant would also be liable for its failure to exercise due care to select contractors who were skillful and competent.

The liability of a municipal corporation for negligence is the same whether the particular work is constructed under a special privilege granted at the request of the corporation, or in the performance of a public and governmental duty.

[Argued October 26th—decided December 13th, 1893.]

ACTION to recover damages for injuries to the plaintiff's gas pipes, brought to the Superior Court in Fairfield County and tried to the jury before *Thayer, J.;* verdict and judgment for the defendant and appeal by the plaintiff for alleged errors in the rulings and charge of the court.

The complaint contained three counts, the first two being for negligence, and the third setting up a contract between the parties whereby the defendant promised and agreed to reimburse the outlay required upon the part of the plaintiff

to protect its pipes from injury and to repair such as the defendant might injure. The opinion, which states the case quite fully, and the charge of the trial judge to the jury given herewith, render any further statement of the case unnecessary.

The court below charged the jury as follows:

" *Gentlemen of the Jury :*

" The complaint in this action consists of three counts; but as the evidence which was offered in support of the third count was excluded, the only issues presented for your consideration arise upon the first and second counts. Those counts allege injuries to the plaintiff's gas pipes, and consequent loss of gas, through the negligence of the defendant.

" The allegations are denied by the defendant. The burden of proof is therefore upon the plaintiff to prove by a fair preponderance of the evidence that it sustained the injuries and loss alleged; that they were caused by the defendant's negligence, as alleged; and that the plaintiff was guilty of no negligence which contributed essentially to such loss and injuries. A failure to establish either of these essential facts by a fair preponderance of the evidence precludes the plaintiff's recovery in this action.

" By the plaintiff's charter it had the right to lay and maintain its pipes in the streets of the borough, for the purpose of distributing gas to its customers. Upon the defendant was imposed the duty of maintaining and keeping in repair the streets in the borough. The defendant had also the right to open the streets and lay and maintain sewers therein. This right and duty of the defendant in respect to the location, construction and maintenance of the public sewers pertained to the general easement in the streets, and the grant to the plaintiff of the right to make use of the streets in the manner and for the purposes stated, was in subordination to such general public easement, and with such expressed and implied limitations as were then or should thereafter be necessary to preserve such easement to the public for all legal and proper uses pertaining thereto, of which the laying of public sewers would be one. The adoption of a general pub-

lic sewer system and plan thereof, and the location of the public sewers under it and changes therein, if any, by a municipal corporation are considered as judicial acts, and in respect to the performance of such acts, no claim of negligence can be asserted. If, therefore, the injuries complained of in this action arose wholly from the adoption by the defendant of the system of sewerage which was adopted, and the plan thereof and the location of the sewers thereunder, as the plaintiff's rights in the streets must yield to the defendant's right to lay the sewer, there could be no recovery in this action. In such a case the plaintiff's remedy, if any, for his resulting damages would not be based upon the negligence of the defendant. But the plaintiff, as you will understand, does not base its claim here upon any fault of the system, plan or location adopted by the defendant. It says that, assuming that to be proper, the defendant negligently constructed the sewer, and by its negligence caused the damage, to recover which this action was brought.

" It was the duty of the defendant to use reasonable care in the construction of its sewers upon the location adopted; and for any damage resulting to the plaintiff or others, as the direct result of the want of such care on the part of the defendant, its agents or servants, it would be responsible in the absence of negligence contributing to the injury on the part of those injured. If reasonable care was used in the construction by the defendant, its agents and servants, then there could be no recovery in this action. If, in properly constructing the sewer according to the system and plans adopted, the plaintiff's pipes or any of them would necessarily be injured, it was the plaintiff's duty if notified, as it is admitted it was notified, of the plan and location, to remove or otherwise protect its property; and for any injury resulting to it from its omission to protect them, the defendant would not be responsible. Nor could the plaintiff recover if its neglect of its duty to thus protect its property essentially contributed to the injuries complained of, although the defendant's negligence in the construction of the sewer was also the cause of the injuries, or one of the causes.

" Assuming then, as you must in this case, that the defendants had the right to construct the sewer according to the plan, and in the location adopted, was it negligent in constructing it, and if so, did that negligence cause the injuries complained of, or any part of those injuries ?

" The plaintiff claims that the defendant was negligent in failing to properly shore and support the walls of the trenches excavated for the sewers, in the manner of blasting for the excavations, and in improperly filling the trenches after the sewers had been constructed, and in improperly opening the trenches wider than the work required. It claims that the walls of the trenches fell in, carrying down and breaking the plaintiff's gas pipes, as the result of the failure to sheathe or support the walls of the trench; that by the improper blasting the gas pipes were thrown up and broken, and that pieces of broken stone and the covering of the blasts were thrown upon the pipes breaking them; and that as the result of improper filling of the trenches the ground in which the gas pipes were located, settled and gave way, cracking and injuring the pipe. That some injury was done to the plaintiff's pipes in each of the ways claimed seems not to be seriously controverted. The question is as to the extent of the injury and damages done to the plaintiff thereby, and whether it was due to the defendant's negligence.

" Negligence is briefly defined to be the omission of some duty imposed by law. To act with reasonable care is a duty which the law imposes upon men. And reasonable care is that degree of care which may be expected, in any case, from an ordinarily prudent man, under those circumstances. So the doing, in any case, what an ordinarily prudent man would not do under the circumstances, or the omitting to do what, under the same circumstances, any ordinarily prudent man would do, is negligence.

" It is for you to determine, from all the evidence in the present case, whether the persons who constructed the sewer in question acted with that degree of care which the law thus makes it their duty to exercise. If they did, there was no negligence of which the plaintiff can complain.

" You will also determine whether the plaintiff acted with that degree of care which it was its legal duty to observe. The absence of such care on the part of either would be negligence.

" A person is answerable for the negligence of his servants, while engaged in his employment, the same as for his own negligent acts. And the defendant borough is thus answerable for the negligent acts of its servants. But a person who, acting in an independent business, undertakes to construct a sewer or other work, employing his own help, and employing his own means of doing the work, and answerable to his employer only for the result of the work, is not a servant, but is called an independent contractor. The carelessness of such a contractor cannot ordinarily be imputed to the contractee, or person for whom the work is undertaken.

" In the present case, the defendant claims that division No. 1 and division No. 2 of the sewer, upon which the negligence complained of is said to have occurred, were constructed respectively by Mr. Cram and Bogart & Son, as independent contractors, and the defendant claims that any negligence of which the plaintiff complains, was, therefore, the negligence of these contractors, and not the negligence of the borough.

" In support of this claim they have put in evidence the written contracts, Exhibits 1 and 2, and claim to have shown that the work was done under these contracts.

" The plaintiff claims the sewers were not built under the contracts by the persons named, as independent contractors, that the contracts do not create the relation of contractee and independent contractors between the borough and those persons; and that if they do, and the work was undertaken to be performed under them, the defendant so interfered with and controlled the work, and the means and method of its performance, that any negligence in the work during its progress was imputable to the defendant. The legal effect of those instruments (Exhibit 1 and Exhibit 2) if duly signed, is to create, as between the borough and the other parties signing, the relation of contractee and independent

contractor. But, if signed, the contracts might be modified by subsequent agreement of the parties, or abandoned entirely, and the work done by the parties on different terms than those stated in the instruments.

"If you find that the defendant borough in the construction of the sewers was engaged in a work which was lawful in all its details, and which could be done in the ordinary method of executing it, without necessarily producing the damage claimed, provided the plaintiff duly performed its duty in respect to its pipes, and did not essentially contribute to such injury and damage, and that the defendant did not employ its own servants and workmen, but intrusted the execution of the work, by contract, to skilled and competent contractors, exercising an independent employment, and doing a specified work for a specified sum, selecting, employing and having the immediate control over the workmen engaged in the work, and having charge and control over the whole work, and being held responsible therefor, and that through the carelessness or negligence of said contractors or their workmen in the performance of the work, the pipes of the plaintiff were injured, such negligence cannot be imputed to the defendant in this action, and it would not be liable for the injury and damage resulting therefrom.

"Nor would the defendants be liable if you found from the evidence that the work was done by skilled and competent contractors, under the written contracts which have been referred to, and find also that the plaintiff's pipes were broken in consequence of the careless and negligent mode of executing the work by said contractors or their workmen so selected, employed, paid, controlled and directed by said contractors: Provided the defendant did not interfere with and assume control, and actually control said work, and the method and means of its performance; and provided the same could be done by the ordinary means of performing such work without necessarily injuring the plaintiff's property.

"If from the evidence you find that the contract was abandoned, and that as to the whole or any part of the work, the defendant assumed the control of and directed the mode and

method of performing the work, and you also find that the work was so done and directed by the defendant, and that it was negligence to so perform the work, and that the plaintiff was injured by such negligence, in the absence of contributory negligence on the part of the plaintiff, the defendant would be liable for the damage resulting from such negligence.

" The plaintiff claims that Bogart & Son and Mr. Cram were not skilled and competent contractors; and that for this reason the borough is not excused from liability for negligence in the contractors of the sewers, although those parties were working under an independent employment.

" If you find from the evidence that those contractors or either of them were unskillful and incompetent to perform the work assumed by them under the contract, and that the borough knowing this, employed them to do the work, the borough would be negligent in knowingly employing such a person to do the work, and would be responsible for any negligence of such a contractor in the same manner that the contractor would be liable for his own negligence.

" Your attention has been called to the provision in the contract providing that the contractors shall be responsible for damage to gas pipes, water pipes, etc. Neither of the contracts which are in evidence contains any provision which directly or indirectly creates any liability on the part of the borough to the plaintiff in respect to any of the injuries complained of in this action. The plaintiff claims that the use of dynamite in the operation of blasting is intrinsically dangerous. The defendant claims that it is not. The question is one to be determined by the jury, from all the facts in the case, whether under all the facts of the case, the operation of blasting with dynamite was intrinsically dangerous, no matter how skillfully performed. You have had the testimony of persons claiming to be skilled in the business, in addition to the facts of the case, to aid you in determining the question, and you will determine from all the evidence whether the work was intrinsically dangerous.

" If, under the instructions given you, you find the plaintiff received any of the injuries which are complained of and that

they were caused by the defendant's negligence, and that there was no negligence on the part of the plaintiff which materially contributed to such injuries, the plaintiff is entitled to recover the damages which it suffered by reason of such injuries. For any of those injuries which were not caused by the defendant's negligence, or which though resulting from the defendant's negligence, resulted in part from the plaintiff's negligence, the plaintiff cannot recover. If you find a verdict for the plaintiff you will assess its damages at such a sum, not exceeding the amount demanded in the complaint, as it has proved will be compensation for the injuries attributable to the defendant's negligence. And you may also consider, in fixing this sum, the length of time since the work was done and give a reasonable amount of damage as interest. If it has failed to lay any evidence before you from which it is possible by any rule to find or estimate the damage actually sustained in respect to any or all of the injuries complained of, then for such injuries you cannot allow the plaintiff more than nominal damages. It is entitled, in other words, to such damages as it proves it has sustained by reason of the defendant's negligence to which its own negligence did not essentially contribute.

"With these remarks I leave the case to you, and you will retire to your jury room and return such a verdict as the evidence warrants."

*John H. Perry* and *J. Belden Hurlbutt*, for the appellant (plaintiff).

I. The court erred in excluding the evidence offered by the plaintiff in support of the third count of the complaint.

It will be observed that the agreement alleged in the complaint was sought to be proved by evidence of such an agreement, made first with the "sewer committee" of the defendant, next with its "borough engineer," and finally with the whole "court of burgesses," duly assembled as such, to which agreement all the members of said court so assembled gave their assent, although they neither took nor recorded a formal vote to that effect.

It is equally apparent that the plaintiff, relying upon said agreement, incurred large expense on the faith of it, and that this was done with the full and constant knowledge of the "sewer committee," the "borough engineer," and the "court of burgesses" and its individual members.

We claim that the action of the "sewer committee" bound the borough ; that the action of the "borough engineer" bound the borough; that the transaction in the "court of burgesses" bound the borough, and that in addition to these, the other facts as offered to be proved, and the undisputed circumstances of the case, imposed upon the borough an obligation to honor such an understanding.

But if none of these considerations avail to show that the defendant made, through duly authorized agents, in a lawful way, such an actual contract with the plaintiff as it alleges, it seems to us that the following considerations fasten upon it by implication, if in no other way, a tantamount obligation.

The borough was by familiar law obliged to keep its highways in such condition as not to work unnecessary injury to the persons or property of those who use them.

The gas company had as good a right to use the interior as the traveling public the exterior of those highways.

The borough was given the privilege (not impressed with the duty) of constructing a system of sewers through its streets. Special acts 1887, page 669; *Weed* v. *Greenwich*, 45 Conn., 170 ; *Emery* v. *Lovell*, 104 Mass., 15 ; *Detroit* v. *Corey*, 9 Mich., 165; *City of Galveston* v. *Posnainsky*, 62 Tex., 118.

It contracted with third persons to do this work.

In that contract it expressly stipulated for such care on the contractor's part as was requisite to prevent damage to the plaintiff's pipes, and for the payment, by the contractor, to it (the borough) of all damage of that character caused by him.

It made this last undertaking of the contractor a perfect protection to itself, by providing for a retention of funds and by requiring a bond to insure it.

When the borough set on foot a voluntary enterprise,

which at least contained large possibilities of peril to the plaintiff's mains, it surely owed the plaintiff enough care to see that so far as it could provide, they should be protected. *Jones* v. *New Haven*, 34 Conn., 14. It accordingly stipulated in its contract for such protection, and made abundant provision in its own behalf that that stipulation should be kept.

It permitted the plaintiff to rest in the belief that the borough thus protected was its guardian and paymaster, and now laughs at its credulity.

If the case of *Tryon* v. *White & Corbin Co.*, 62 Conn., 161, is to stand, the defendant in this case must surely honor the plaintiff's faith.

To the same effect are: *Bulkley* v. *Derby Fishing Co.*, 2 Conn., 252; *Howe* v. *Keeler*, 27 id., 538; *Hart* v. *Stone*, 30 id., 96; *U. S.* v. *Fillebrown*, 7 Peters, 28; *Messenger* v. *City of Buffalo*, 21 N. Y., 196; *Allegheny City* v. *McClurkan*, 14 Pa. St., 81; *McCaughey* v. *Tripp*, 12 R. I., 451; Dillon Municipal Corp. (4th ed.), sec. 300.

II. The court erred in overruling the demurrers to the second or special defense, to the first and second counts of the complaint.

The mistake of the defendant in its contention, and the court in its ruling, in the use of the rule of the subordination of the right of the plaintiff to maintain its gas pipes in the street to the defendant's right to construct and maintain sewers therein, is in the application of it to this case. They can nowhere find it laid down—nor ought it to be—that the municipality is not bound to use care in the construction of their sewers, and to protect property lawfully permanently located in the street, even when the sewers are constructed under the duty of repairs of the highway. *Gas Light & Coke Co.* v. *Vestry of St. Mary's Abbott's*, 15 Q. B. Divis., 1; *Danbury & Norwalk R. R. Co.* v. *Town of Norwalk*, 37 Conn., 119.

That a municipality bound to keep its streets in repair, is liable to persons suffering damage from defects in the street, even when such defects are the result of negligence of in·

dependent contractors performing work for it, would seem to be beyond dispute. Elliott on Roads and Streets, 467, and notes 4–7, and authorities; *Barnes* v. *Dist. of Columbia*, 91 U. S., 540; *Circleville* v. *Neuding*, 41 Ohio St., 465; Wood on Master & Servant, sec. 316; 4th ed. of Dillon on Munic. Corp., sec. 1029; *Joliet* v. *Harwood*, 86 Ill., 110.

Is there any difference in principle between a man lawfully driving along a street with a load of merchandise, by the side of a trench which, through negligent shoring or no shoring at all, caves in, and his merchandise is destroyed and vehicle injured, and an injury from the same cause to one having a lawfully fixed means of conveyance situated right under where the man was driving, and used by the owner to convey its merchandise, to wit, gas, to its customers?

If the corporation would be liable if doing the work by its employees, we say no contract relation with the ones doing rock blasting for it will relieve it from liability. Such work was contemplated to be and was done. In common knowledge, and as treated in text-books and decisions, rock blasting is a dangerous operation, which, in the progress of its execution, obviously exposes others to unusual peril. It is inherently dangerous work, and a nuisance. Smith on Negligence, 57 and 58, sec. 87; 2 Thompson on Negligence, sec. 5, p. 739, notes and authorities; Dillon on Munic. Corp., 4th ed., sec. 1029 and authorities; Wood on Mast. and Serv't, sec. 316; Wood on Nuisances, p. 142; *Wood* v. *School Dist. of Mitchell*, 44 Iowa, 27; *Hay* v. *Cohoes*, 2 N. Y., 159; *Reg.* v. *Mutters*, Leigh & Cave's Cases, 491; *Barnes* v. *Dist. Columbia*, 91 U. S., 551, 554; *Bailey* v. *Mayor, etc.*, 3 Hill, 531; Mechem on Agency, sec. 747 and authorities, n. 4; *Bower* v. *Peate*, L. R. Q. B. Div., vol. I, 321; *Woodman* v. *Metropolitan R. R.*, 149 Mass., 335; *Stock* v. *Boston*, id., 410; *Fletcher* v. *Rylands*, L. R. 1 Ex., 280; Cooley on Torts, 548; Elliott on Roads and Streets, 466; *City of Logansport* v. *Dick*, 70 Ind. 65; *Linnehan* v. *Rollins*, 137 Mass., 123; *Van Pelt* v. *City of Davenport*, 42 Iowa, 308; *Rowe*

v. *Portsmouth*, 56 N. H. 291 ; Ray on Negligence of Imposed Duties, 37, 38, 39.

The work was conducted under a special privilege, granted by the legislature, and gave no such immunity to the defendant in its performance as the construction of sewers under the public duty imposed on it to repair its streets.   *O'Rourke* v. *City of Sioux Falls*, 19 Lawyers' Rep. Anno. 789 ; *Wood* v. *Greenwich*, 45 Conn., 170 ; Angell & Ames Corpo., secs. 38, 238, 219 ; *Phil., W. & B. R. R. Co.* v. *Davis*, 10 Central Reporter, 553 ; *City of Detroit* v. *Corey*, 9 Mich. 165 ; *Barnes* v. *Dist. Columbia*, 91 U. S. 552.

III. The court erred in the charge to the jury in the following particulars, viz. :

As to the legal effect of the contracts between the sewer builders and the defendant ; in the statement that the defendant would be liable only in the event that it actually exercised control over its contractors in their work ; in the statement that the defendant would be liable for the acts of incompetent contractors only in case it employed them knowing them to be incompetent ; in the statement that the contract contained no provision which directly or indirectly imposed any liabilities upon the defendant for the injuries suffered by the plaintiff ; in requiring the jury to determine the question of intrinsic danger, and neglecting to instruct them as to how that determination should be applied to the case ; in charging the jury in substance that the construction of the sewers by the defendant was under its public duty of maintaining and keeping in repair the streets.

The defendant nowhere in its pleadings alleges that the contractors in question were independent, or that it did not have full control of the work.

It surely cannot require the citation of authorities to show that the retention of a right to superintend, supervise or control the conduct of the work is incompatible with the existence of an " independent contractor."   *Linnehan* v. *Rollins*, 137 Mass., 123 ; *Stock* v. *Boston*, 149 id., 410.

Where the fact that the defendant's superintendent of sewers merely " inspected " the work done by a contractor,

seems to have made the city liable. *Cincinnati* v. *Stone*, 5 Ohio St., 38 ; *Chicago* v. *Joney*, 60 Ill., 387 ; especially see *Chicago* v. *Dermody*, 61 id., 431.

As to the statement that the defendant would become liable for the contractor's negligence only in the event that it actually assumed control over them in their work :—

This, of course, treats the right to such control as immaterial, and as imposing no liability until exercised. That is not so. It is not the fact of actual interference and control, but the right to interfere, which makes the difference between independent contractor and a servant or agent.

But perhaps, under the circumstances, this part of the charge does not materially add to the error in it last above considered, for our claim is that the defendant reserved to itself the right to control methods in the particulars wherein we were injured ; and that it is therefore responsible whether it actually exercised that right or not. *Linnehan* v. *Rollins*, 137 Mass., 123 ; *Carman* v. *Steubenville & Indiana R. R. Co.*, 4 Ohio St., 399.

As to that part of the charge which requires the jury to determine the question of intrinsic danger, and then neglects to inform them of its bearing on the case when determined :—

It surely is material, and if the work contracted to be done was in its nature dangerous to the persons and property of third parties, the defendant cannot shelter itself behind even an independent contractor.

The court should have so charged. His omission to do so was a vital error.

That this question of intrinsic danger is material, and that the existence of such danger has the effect claimed by us, appears from the following authorities :

" If I employ a contractor to do a job of work for me, which in the progress of its execution obviously exposes others to peril, I ought, I think, to be responsible upon the same principle as in the last case, for I cause acts to be done which naturally expose others to injury." SEYMOUR, J., in *Lawrence* v. *Shipman*, 39 Conn., 586.

" A municipal corporation is not liable for the negligence of an independent contractor, * * * unless the act contracted to be done was intrinsically dangerous, such as blasting rocks. 2 Thomp. on Neg., 739–40; *Woodman* v. *Metropol. R. R.*, 149 Mass., 335, 1889; *Bower* v. *Peate*, L. R. 1 Q. B. Div., 321; *Dalton* v. *Angus*, L. R. 6 App. Case, 791; Mechem on Agency, sec. 747, note 3 and cases there cited; 2 Dillon Munic. Corp., (4th ed.,) § 1030, note; *Joliet* v. *Harwood*, 86 Ill., 110.

*Levi Warner* and *Samuel Tweedy*, for the appellee (defendant).

1. The construction given to the sewer contracts and the charge of the court relative thereto were correct. Wood on Master and Servant, 2d. ed., §§ 460, 314; *Corbin* v. *American Mills Co.*, 27 Conn., 274; Pollock on Torts (1887), p. 53; Addison on Torts, 6th ed., vol. 1, side page 103.

The servants of a contractor are the servants of his principal only where the latter has the right to select and control them. *Corbin* v. *American Mills Co.*, 27 Conn., 274; *Burke* v. *Nor. & Wor. R. R. Co.*, 34 id., 474, 481; Wood, *supra*, pages 594, 596, 597, 598, 599, 601, 603, 614, 615 (notes and cases). *Chambers* v. *Ohio Life Ins. & Trust Co.*, 1 Disney (Superior Court, Ohio), 327; *Jones* v. *Corp. of L'pool*, 14 L. R. Q. B. D., 890 (1885); *Forsyth* v. *Cooper*, 11 Allen, 419; *Hunt* v. *Penn. R. R. Co.*, 51 Pa. State, 475; *Allen* v. *Willard*, 57 id., 374; *Painter* v. *Mayor of Pittsburgh*, 46 id., 213; *Reed* v. *Allegheny*, 79 id., 300; *City of Erie* v. *Caulkins*, 85 id., 247; *Diamond Match Co.* v. *New Haven*, 55 Conn., 510; *Pack* v. *Mayor*, 4 Selden's (N. Y.), 222; *Kelly* v. *Mayor*, 1 Kernan's (N. Y.), 432; *Herrington* v. *Lansingburgh*, 110 N. Y., 145; *Callahan* v. *Burlington etc. R. R. Co.*, 23 Iowa, 562; *Reedie* v. *London etc. R. R. Co.*, 4 Exch., 244; *Steel* v. *Southeastern Railway Co.*, 32 Eng. L. & Eq., 366.

Where the contractor has general control, although as to some matters the contractee takes supervision, the contractee is not liable for the contractor's negligence except when the injury results at a time when the contractor was acting un-

der the direction of the contractee.   Wood, *supra*, page 594;
*Samuelson* v. *Cleveland Iron Min. Co.*, 49 Mich. 164; *Hughes*
v. *R. R. Co.*, 39 Ohio St. 461; *Riley* v. *State Line S. S. Co.*,
29 La. Ann., 791.

" The fact that the employer reserves the right to change
the plan of doing the work; or that the work shall be done
to the satisfaction of the employer or of an agent appointed
by him ; or that the employer reserves the right to discharge
any of the contractor's men, does not affect the question."
*Cuff, Adm'x*, v. *Newark etc. R. R. Co.*, 35 N. J. Law, 17, 23–4,
27, 28; *Eaton* v. *European etc. R. R. Co.*, 59 Me. 520, 533;
*Burmeister* v. *N. Y. Elev. R. R. Co.*, 47 N. Y. Super. Ct.,
264.

Neither the agreement by the contractor to pay damages
resulting from the work, nor his agreement that the con-
tractee may retain funds for that purpose, affect his relation
as an independent contractor.   Wood, *supra*, p. 597; *Tib-
betts* v. *K. & L. R. R. Co.*, 62 Me., 437; *McCafferty* v. *Spuy-
ten Duyvil, etc., R. R. Co.*, 61 N. Y., 178; *Herrington* v.
*Lansingburgh*, 110 id., 145, 148; *City of Erie* v. *Caulkins,
supra.*

The further claim is made in respect to the work required
under section 22 of the specifications, that it was work " in-
herently dangerous " in itself, and that, therefore, the bor-
ough could not shield itself behind these contractors in
respect to any injuries caused by the work of blasting.

The following cases support our contention that the ques-
tion now under discussion is one of fact and not of law, and
some of them bear also on the last point made.   *Wood, su-
pra*, pages 607–8, and cases cited; Cooley on Torts, p. 548,
and cases cited; 1 Addison on Torts, 6th ed., s. p. 103–6;
*Corbin* v. *American Mills Co.*, 27 Conn., 274; *Hilliard* v.
*Richardson*, 3 Gray, 349; *Murphy* v. *City of Lowell*, 128
Mass., 396–7; *Portsmouth Gas Light Co.* v. *Shannahan*, 65
N. H., 233, 241–2; *Tibbetts* v. *R. R. Co.*, 62 Me., 437; *Pack*
v. *Mayor*, 8 N. Y., 222; *Kelly* v. *Mayor*, 11 id., 432; *Mc-
Cafferty* v. *R. R. Co.*, 61 id., 178; *Herrington* v. *Lansingburgh,*

110 id., 145; *Reedie* v. *Ry. Co.*, 4 Exch., 244; *Blumb* v. *City of Kansas*, 84 Mo., 112.

The fact, even if true, as claimed by the plaintiff, that these contractors were negligent in respect to the work in question, afforded no presumption that the defendant was guilty of negligence in having employed them, and it nowhere appears that any other evidence even tending to show incompetency was offered. *Sullivan* v. *N. Y., N. H. & H. R. R. Co.*, 62 Conn., 209, 215, 216; *Baulec* v. *N. Y. & Harlem R. R. Co.*, 59 N. Y., 356.

The defendant, in construction of its sewers, was engaged in a work of public convenience and necessity, and the plaintiff's rights in the streets were subordinate to those of the defendant. *Cone* v. *City of Hartford*, 28 Conn., 363, 372; Elliott on Roads and Streets, p. 305, 306; *Nor. Gas Light Co.* v. *Nor. City Gas Co.*, 25 Conn., 19, 39; *Branson* v. *City of Phila.*, 47 Penn. St., 329; *Kirby* v. *City Ry. Co.*, 48 Md., 168.

Such being the relative rights of the parties in the streets, the plaintiff took the risk of the location of its pipes therein, and was required to make such changes as public convenience demanded, and to assume the burden of protecting and preserving its own property when necessarily liable to injury from the proper and careful performance of a public work of the character in question here. *Matter of Derring's Petition*, 93 N. Y., 361; *City Nat. Water Works* v. *Kansas City*, 28 Fed. Rep., 921; *Portsmouth Gas Light Co.* v. *Shannahan*, 65 N. H., 233, 241-2.

The evidence offered in support of the third count was properly excluded.

Before the acts or declarations of either of these claimed agents, in respect to this contract, could have been received in evidence, their authority to make such a contract must have been shown. Neither their acts nor declarations were proof of such authority. *Scott* v. *Cram*, 1 Conn., 259; *Fitch* v. *Chapman*, 10 id., 12; Mechem on Agency, sec. 136 and note; Wharton's Evidence, 3d ed., vol. 2, sec. 1183–1187.

In cases of public agents, where the powers and duties are

defined of public record, the public authority is not bound, unless it manifestly appears that the agent is acting within the scope of his authority. Beach on Pub. Corp., secs. 195, 202, 691, 1143 and notes ; Story's Agency, *supra*, 306*a* and note 1 ; Mechem on Agency, secs. 273, 291, 292 ; Dillon's Munic. Corp., 4th ed., secs. 445, 447 ; *Baltimore* v. *Eschbach*, 18 Md. 282.

The legislative and discretionary powers of a public corporate body can be exercised only by the coming together of the members who compose it, and its purpose or will can be expressed only by a vote embodied in some distinct and definite form. Beach on Pub. Corp., secs. 274, 275, 1143, notes and cases ; Dillon's Munic. Corp., sec. 270, note 2 ; *Schumm* v. *Seymour*, 24 N. J. Eq., 143, 153.

FENN, J. The plaintiff's complaint, as amended, contains three counts. In the first it is alleged, in the first paragraph, that the plaintiff was in 1856 granted a charter of incorporation, empowering it to manufacture and sell gas in the town and borough of Norwalk, for lighting the streets and other purposes, and to lay down its gas pipes and appurtenances in the streets of said town or borough ; and that under its charter it did lay such pipes in such streets, and has ever since maintained them there, and conducted the business for which it was chartered. In the second paragraph it is stated that about July 6th, 1887, the defendant borough began the construction of a general sewer system for the borough, in the streets of the borough, wherein lay the plaintiff's pipes, and substantially completed said construction about November, 1888. The third and fourth paragraphs of the count contain averments of the defendant's negligence in the performance of said work, in the excavation of earth, blasting of rocks, and filling of trenches ; and damage to the plaintiff by the needless breaking and injury of its pipes, and the escape of gas therein contained, and in the storage tanks, resulting therefrom ; and expense in repairing, restoring and re-laying pipes and in superintending its lines during the defendant's work of construction, thereby

caused. The second count is similar to the first, except that in the second paragraph it is averred that :—" It suited the convenience of the defendant in constructing said sewer system to excavate the streets of said borough in excessively wide trenches, and keep the same open unusual and unnecessary lengths of time, and in such excavating in many places the defendant blasted out wide trenches through ledges of rock, using therefor dynamite and other high explosives, which blasting is an operation inherently dangerous and destructive to property, and demands of those engaged in it a high degree of care, skill and prudence duly to protect the property rights of others." In the third count, paragraphs one and two of the first count are adopted, and it is then averred that :—" When constructing said sewers the defendant, in consideration that the plaintiff would employ sufficient men and provide materials to secure the plaintiff's mains and pipes from injury which might result from the defendant's operations, and would repair said mains and pipes when broken or injured thereby, which injuries the defendant could and should provide against by exercising reasonable care in its said operations, agreed with the plaintiff, on demand, for a valuable consideration, to reimburse the plaintiff for all expense it might incur and labor it might expend for the proper security of its mains and pipes, and for the repair and restoration of the same when injured by the defendant as aforesaid ; and that, pursuant to said agreement, the plaintiff performed work, incurred expense, and made disbursements to the amount of $1,000.85, all of which was made necessary by the defendant's operations aforesaid." An itemized bill of particulars under this count was also filed.

To the defense of denial to all the counts the defendant added a second defense to the first and second counts respectively, which contained the following allegations:—That public convenience and necessity required the construction of said sewers, and that they were constructed under and by virtue of authority given to the defendant by the State ; that when such construction was commenced neither the defendant nor any of its officers or agents knew or were able

to ascertain the location of the gas pipes of the plaintiff, and were therefore unable to so locate and construct said sewers as to avoid the said gas pipes, and locate and construct said sewers where said gas pipes were not located ; that it was necessary to locate and construct said sewers where they were located and constructed, and to construct them in the way and manner in which they were constructed ; that the plaintiff knew the location of said sewers and where they were to be constructed before such construction was commenced, and made no objection to such location or construction ; that the plaintiff might and should have taken up said gas pipes and removed them to such places in said streets as were not used by the defendant in the construction of said sewers, and where they would not have been injured; yet that the plaintiff neglected so to do, though thereto requested ; that all the work done in the construction of said sewers "was done by contractors, who were acting under contracts which the defendant by its proper officers had before that time entered into under the advice of competent counsel, and the acts complained of by the plaintiff, if done, were done by said contractors, and not by or under the direction or procurement of the defendant ; " and that the defendant, in all it did in the location and construction of said sewers, acted by its proper officers, in the discharge of a duty to and for the benefit of the public, and that its acts were necessary, and were done with reasonable care and without negligence on its part.

To these defenses, which were alike, the plaintiff demurred, on the ground, in substance, that none of these matters alleged constituted any defense or exempted the defendant from liability for negligence in the construction of the work, such negligence being, as claimed by the plaintiff, the gist of its action. But the court overruled the demurrers and thereupon the plaintiff answered over, alleging in its reply that the contractors engaged by the defendant to construct its sewers were at all times under the immediate direction of the defendant, particularly as to the manner of doing the work ; that said contractors were engaged in behalf of the

Norwalk Gaslight Co. *v.* Borough of Norwalk.

defendant to take care of the plaintiff's gas pipes and preserve them from the injuries complained of, and that the acts complained of were done by the defendant, and under its direction and procurement, and were in law its acts. To this reply there was a rejoinder, in which it was admitted that the contractors employed by the defendant were under its direction, so far as to insure the performance by them of the work on said sewers, according to the requirements of the contracts, and no further.

The case was tried to the jury and resulted in a verdict for the defendant. The plaintiff in its appeal assigns twenty-four reasons, which may, however, be considered under three heads : first, the alleged errors in overruling the demurrers to the second or special defenses to the first and second counts of the complaint ; second, in excluding the evidence which was offered by the plaintiff in support of the third count of the complaint ; third, in the charge of the court to the jury.

In reference to the first head we are inclined to think that the court erred. The defenses on their face purport to be, and to have been filed as, full defenses to the first and second counts respectively. In our judgment they are not such. It will be seen, by reference to the first count of the complaint, that the *gravamen* of the grievance complained of is, as the plaintiff insists, the negligence of the defendant in the work of construction. The allegations of the answer of public convenience and necessity, of authority from the State, of want of knowledge of location of the plaintiff's pipes, of the discharge of a duty, the advice and superintendence of a skillful and competent engineer, and the like, however important some of these things may be as matters of evidence tending to show that no such negligence in fact existed, clearly constitute, severally or collectively, no excuse or justification for it if it did exist. The allegations that all acts done by the defendant " were necessary to be done, and were done with reasonable care and without negligence on the defendant's part," cannot serve to make a special defense, otherwise bad, of validity, since they constitute in effect a

mere denial of allegations of the plaintiff's complaint and a mere repetition of the defense of denial already pleaded. And finally, as to the allegations above referred to, that "all the work done in the construction of said sewers was done by contractors, who were acting under contracts which the defendant by its proper officers had before that time entered into under the advice of competent counsel, and the acts complained of by the plaintiff, if done, were done by said contractors and not by or under the direction or procurement of the defendant"—this averment, if, as contended by the defendant, sufficient in itself to constitute a valid statement of a defense that the work in question was done by independent contractors, for whose acts the defendant was not liable, is certainly, if so understood, not only distinct from, but inconsistent with the other paragraphs of the answer in which it is placed. It ought rather as we think, if possible, to be construed in connection with the rest of the answer and as harmonizing with it, and, so understood, the allegations are of acts done by the defendant in making contracts under the advice of competent counsel, showing the exercise of reasonable care, and not of facts, the implied legal effect of which is to exempt the defendant from liability for the want of such care. Although this construction may not seem the most obvious, yet, since there is no direct averment that the contractors were independent, either of the actual control or of the right of control of the defendant, and as there is an averment in the next consecutive paragraph of the same answer that acts and things in the construction of these sewers were done by the defendant under the advice of a superintendent employed by it to superintend the construction of the sewers, it is, as we think, all things considered, the most reasonable and fair construction to be made. And as so construed, the demurrer to this paragraph, as insufficient to exempt the defendant from liability for injury occurring by reason of the negligence of such contractors, was well taken.

It may be added that the plaintiff, in its demurrer to the second defense, as applied to the second count of the com-

plaint, assigned the following additional reason of demurrer:
—" Because no contract or covenant between the defendant
and any independent contractor, not the plaintiff, can relieve
the defendant of the liability for injuries done the plaintiff
by such contractor, by his negligence in the inherently dan-
gerous operation of rock blasting with dynamite, as alleged
in the second count of this complaint; " thereby presenting
another question, which, as it will also arise and call for
consideration in connection with the charge of the court,
we will not now examine. Indeed it is apparent from the
record that the case was tried to the jury precisely as it
would have been had the plaintiff not demurred, and the
same questions of law arose upon the trial and were passed
upon by the court in its charge to the jury, as were raised
by demurrer. It is therefore appropriate, and has seemed to
us best, to review these questions principally in connection
with the consideration of such charge.

Before doing this, however, we will examine the question
based upon the action of the court in excluding evidence
offered by the plaintiff in support of the third count of the
complaint. As bearing upon this subject, the finding states
that upon the trial the plaintiff first offered evidence to
prove, and claimed to have proved, that the defendant peti-
tioned for and obtained from the legislature of this State,
authority to construct a general sewer system for the whole
borough, which enactment was accepted by the borough in
due and legal manner; that after such acceptance, (and
this was conceded,) the borough passed votes providing that
the cost of the system should be borne by the borough at
large and not by assessment of benefits, and directing the
court of burgesses to begin the construction of such system
at once, and making due appropriation for the work; that
such sewers were constructed pursuant to a resolution of
said court of burgesses; that at the same meeting of said
court of burgesses at which said sewer construction was re-
solved upon as aforesaid and undertaken, it was also " Re-
solved that the sewer committee be authorized to superintend
and direct the details of the work authorized at this meet-

ing ; " that the sewer committee referred to was a standing committee of the court of burgesses, and consisted of three of the six members of said court; that one of the officers of said borough was the borough surveyor, a position occupied then and ever since by Charles N. Wood, a civil engineer; that he, under the direction of the court of burgesses, had prepared said general sewer system, and that his duties were defined by the following by-law:—" Chap. 13, sec. 1. The borough surveyor shall make all surveys, maps, plans, pro-files, specifications and estimates necessary for the public works and street improvements of the borough, and super-intend execution of such works and improvements, and cause to be carried into effect all orders of the court of bur-gesses, in reference thereto, whenever such duty is not other-wise specially assigned by said court; " that at the outset of this sewer construction the sides of an open sewer trench, about five hundred feet long and ten feet deep, caved in, by reason of neglect to properly shore or brace the sides of the excavation, and broke down the plaintiff's gas pipes, in the solid earth, from two to three feet away from the trench; and that thereupon the plaintiff claimed that the injury thus resulting to its gas pipes was due to negligence in the con-struction of the sewers.   The finding then proceeds as fol-lows :—" Having offered evidence as aforesaid, the plaintiff then offered evidence to prove that the sewer committee, after some damage had been done to the plaintiff's pipes, authorized and directed the plaintiff to employ sufficient men and provide materials to secure the plaintiff's mains and pipes from any injury which might result from the de-fendant's operations, and to repair said mains and pipes when broken or injured thereby ; and agreed with the plain-tiff to reimburse the plaintiff for all the expense it might so incur.   To this evidence the defendant objected, and the court sustained the objection."

" The plaintiff then offered the same evidence in connec-tion with other evidence tending to show that the defendant had acted upon the faith of said action of the sewer commit-tee, and had performed the work contemplated by said ar-

rangement; for the purpose of showing that the defendant
had due notice that said work was performed for the borough,
upon a claim for reimbursement from the defendant, and of
which the defendant had the full benefit; and upon the fur-
ther offer by the defendant to show that no objection was
ever made by the defendant to the rendering of said services
or the furnishing of said materials.   The defendant objected
to the evidence thus offered, and the court sustained the ob-
jection."

" The plaintiff offered to show that the foregoing arrange-
ment was also authorized by Charles N. Wood, the borough
engineer, and that it was performed at his request and with
his knowledge and assent throughout.   This evidence was
claimed for the purpose of direct proof of the claim for re-
imbursement under the third count, and also for the purpose
of thereby showing notice to the borough that said work was
performed and materials furnished for the benefit of the bor-
ough, with notice to it and without objection.   The defend-
ant objected to the evidence and the court excluded it."

" The plaintiff offered to prove that Charles N. Wood, act-
ing in his capacity as borough officer or agent, directed the
plaintiff to perform the work of repairing its gas pipes, broken
in the course of construction of the sewers, as set out in the
bill of particulars filed under the third count, upon the credit
of and to be paid for by the borough; that he reported to
the court of burgesses at a regular meeting of the court in
the presence of the superintendent of the plaintiff company,
that he had made such agreement, that the work was being
performed under it, and that the individual members of the
court of burgesses then and there assented to it, though it
was admitted that no formal vote was taken or recorded.   This
evidence was claimed for the purpose of showing notice to the
borough of the work being done, and the claim and belief un-
der which it was being done, and as a ratification and accept-
ance of the act of said Wood, and tne plaintiff claimed that
no vote or record evidence was necessary to bind the borough
to pay for such services and material.   The defendant object-
ed to the evidence and the court excluded it."

" No evidence was offered to show any vote or other action of the borough, or court of burgesses, authorizing or confirming the claimed action of the sewer committee and borough engineer aforesaid, and it was not claimed that there was authority for said action other than as is hereinbefore stated."

Were the foregoing rulings of the court, all of which were duly excepted to by the plaintiff, correct?

It is true, as insisted by the defendant in its brief, that before the acts or declarations of either of these claimed agents, the borough engineer or the sewer committee, could be received in evidence to bind the defendant by virtue of their agreement or promise alone, their authority to make such a contract must have been shown, and that neither their acts nor declarations were proof of such authority. It is also true, as it seems to us, that the preliminary evidence offered as hereinbefore stated, (the contract hereafter referred to not then having been laid in, nor would it have altered the case if it had been,) did not show such authority, either by virtue of their powers generally as public officers, or of the votes and by-laws which gave them special authority. And it is further true that such powers as the court of burgesses of the defendant borough had, of either a legislative or discretionary nature, could be legitimately exercised only by the coming together of the members who composed it, and the expression of this purpose or will embodied in a vote in some distinct and definite form. But, notwithstanding all these considerations, we are of the opinion that this evidence, when offered in its entirety, should have been received and submitted to the jury, as tending to prove the third count in the complaint, and this, as it appears to us, upon the plainest and most manifest principles of equity and good conscience. The preliminary evidence tended to show an adoption by the borough of a general system of sewerage, the cost of which was to be borne by the borough at large, and the investing, by the borough, of its court of burgesses with full power and authority in the matter of construction; that said court of burgesses authorized the sewer committee, being three of its own six members, to superintend and direct the details of the

work, and that the borough surveyor, or engineer, as he has been styled, by virtue of a by-law of the borough, also possessed important powers to be exercised in behalf of the borough; and that at the outset of the work of construction an injury occurred to the plaintiff's property claimed to be due to negligence in such work. Upon this state of facts, and after such damage done to the plaintiff's property, that the sewer committee and borough engineer or surveyor should have undertaken to authorize the plaintiff to use competent means to protect its property from further injury which might result from the defendant's operations, and should have offered to reimburse the plaintiff for the expense which it might incur thereby, would find a natural and reasonable explanation upon the ground that in that way, at less expense than in any other, could the borough relieve itself from liability to the plaintiff for such damage resulting from its acts as it would be legally obligated to make compensation for. Such officers, clothed with such powers and charged with such duties as we have seen, to be exercised and performed for and in behalf of the defendant borough, could scarcely have hesitated in arriving at the conclusion that under such circumstances the employment of the plaintiff would be an act which their principal would not fail to ratify and confirm. On the other hand, we think the plaintiff, under such circumstances, although bound to know the extent of the authority of the defendant's agents, would be justified in doing the work contemplated by the arrangement for the borough, upon a claim for reimbursement from it; provided, (as we have seen the plaintiff also offered to prove) a report was made while the work was being performed, to the court of burgesses, at a regular meeting thereof, in the presence of the superintendent of the plaintiff company, that such agreement had been made, and that the work was then so being performed under it; and that the individual members of the board then and there assented to it. This was a matter in which the borough could speak only by its court of burgesses. Upon the facts offered to be proved it would at least appear that no disapproval of the reported action of the officers of

the borough was manifested by that body. The time to deny the authority of such agents to contract with the plaintiff, in behalf of the borough, for what they deemed to be for its interest, was when the report of their action was made. Failure then to dissent, silence when it became a duty to speak, constituted assent. Retaining then the benefit of the contract, the borough must be held thereby to have ratified it, and to be estopped from afterwards denying its liability under the arrangement made with the plaintiff. *Perry* v. *Simpson Waterproof Mfg. Co.*, 37 Conn., 520, 534; *New Haven, Midd. & Will. R. R. Co.* v. *Town of Chatham*, 42 Conn., 465.

We have now to consider the errors alleged to exist in the charge of the court to the jury. As bearing upon the first of these the record states that the defendant, after proper preliminary evidence, offered certain contracts, for the purpose of showing that the acts of claimed negligence were not the acts of the borough, but were acts of the contractors, for whose negligence the defendant borough was not liable. The plaintiff objected to these contracts, first, as being no defense to its claim for damages to the property of the plaintiff, caused by negligence in the building of the sewers; second, as no defense to such claim so far as the damage was caused by negligence in blasting rock with dynamite, such blasting being an operation inherently dangerous; third, because, as a matter of construction, these contracts were not independent, and because the borough retained control over the work and manner of doing the work, and had the right to direct how all parts of it should be done. It was agreed that the contracts might be formally laid in, and that the plaintiff should have the benefit of all these objections, and that the court would make its final ruling in the charge to the jury with the same effect as though exceptions had been taken to the rulings of the court therein contained. The court charged the jury that the legal effect of the instrument was to create, as between the borough and the other parties signing, the relation of contractee and independent contractor.

Was this a correct construction? One of the contracts

(both of which are admitted to be substantially alike) is annexed as an exhibit to the finding, and we have examined it with much care. It is of very great length, covering twenty closely printed pages. It is therefore, of course, impracticable to give it here in full. Nor is it essential for a due presentation of the question involved. It is provided in it that the court of burgesses of the defendant borough is authorized by its engineer, or such other person or persons, or in such other manner as it may deem proper, to inspect the materials to be furnished and the work to be done under the agreement, and to see that the same correspond with the specifications. And in the specifications it is prescribed, among other things, that " the work shall be backed in carefully, rammed and packed in and around the sewer, with proper tools, by trusty persons, approved by the engineer, and no tunneling will be allowed, except by written permission of the engineer. If, in excavating for any sewer or branch thereof, any water pipe, gas pipe, or other obstruction be met with, that in the judgment of the engineer should be avoided, then the party of the second part," (the contractors) " after the same has been measured by the engineer, shall immediately fill such excavation ; " that the work shall be " prosecuted at and from as many different points in such part or parts of the avenues or streets on the line of the work as the engineer may from time to time, during the progress of the work, determine ; " that plank foundations shall be laid when necessary in the opinion of the engineer ; that all work to complete drainage shall be done according to the plans, etc., and " in accordance with all the directions of the engineer of said sewer committee ; " that " in cases of rock blasting, the blast to be carefully covered with heavy timber, according to the ordinances of the court of burgesses relative to rock blasting, which shall be strictly observed," (meaning, the plaintiff insists, those thereafter to be passed, as evidence was offered to prove that none then existed) ; that certain rock should be excavated " with as little blasting as possible, and under the immediate supervision and direction of the engineer or his assistant ; " that " if any person em-

ployed by the contractor on the work shall appear to the engineer to be incompetent or disorderly, he shall be discharged immediately, on the requisition of the engineer, and such person shall not again be employed upon them without permission of the engineer;" that "if any materials or implements shall be brought to the ground which the engineer may deem to be of improper description or improper to be used in the work, the same shall be removed forthwith."

These provisions, and others of similar import in the contract and specifications, certainly denote that a high degree of power to be exercised in the supervision of the work and to insure its performance by the contractor, was reserved by the defendant borough to its agents, acting in its behalf; and, when coupled as it is with other provisions providing for the responsibility of the contractor. "for all damages which may happen to neighboring properties, or in any way from neglect," and that he shall at his own expense, "shore up, protect, restore and make good, as may be necessary, all buildings, walls, fences or other properties which may be disturbed or injured during the progress of the work"— fairly indicate that an intention existed on the part of the borough to reserve such control as in the judgment of its advisers was inconsistent with such immunity from liability as is now claimed in its behalf. But on the whole we are inclined to think that the weight of authority upon this question justifies us in holding that the reservations of control, being but partial, and existing in certain respects only, did not prevent the existence of the relation of contractee and independent contractor; that the general control over the work, as to the manner and method of its execution, the oversight and direction of the performance of the actual manual labor, especially in the particulars in the execution of which the plaintiff claimed that the injury to its property was caused, notwithstanding the prescribed limitations, remained in the contractor; that the persons doing the work were his servants, not those of the defendant, and that these considerations relating to general control constitute the true test by which to determine whether the relation be that of

employer and contractor or that of master and servant. We think, therefore, the charge of the court in this respect was correct. *Corbin* v. *Am. Mills Co.*, 27 Conn., 274; Wood on Master & Servant (2d ed.), 594 to 615 and notes; 14 Am. & Eng. Ency. of Law, 841, and note 3, and cases cited; Cooley on Torts (2d ed.), 646, and cases cited.

The court further said to the jury that if the work was done by skilled and competent contractors, under the written contracts referred to, and the injury to the plaintiff's property occurred in consequence of the negligence of such contractors or their workmen, the defendant would not be liable, provided it did not interfere with and assume control, and actually control said work and the method and means of its performance, and provided the same could be done by the ordinary means of performing such work without necessarily injuring the plaintiff's property. Of this instruction the plaintiff also complains, insisting that the language used treats the right to control as immaterial, and as imposing no liability until exercised. It is indeed true, as the plaintiff says, that "it is not the fact of actual interference and control, but the right to interfere, which makes the difference between an independent contractor and a servant or agent." But when, as we have held in this case, the relation is the former, it is then correct to say, as the court did, that the liability of the contractee in such cases arises from the fact of actual interference and control.

The plaintiff also complains of the further statement of the court to the jury, excusing the defendant from liability for work done by independent contractors, provided the work could be done by ordinary means of performing such work without necessarily injuring the plaintiff's property.

And in connection with this the following language, used by the court and also complained of by the plaintiff, may be considered. The court said:—"The plaintiff claims that the use of dynamite in the operation of blasting is intrinsically dangerous. The defendant claims that it is not. The question is one to be determined by the jury, from all the facts in the case, whether under all the facts of the case,

the operation of blasting with dynamite was intrinsically dangerous, no matter how skillfully performed." It is said that in making this last statement the court omitted to inform the jury what bearing such determination, when made, would have on the case. This appears to be true, at least so far as express language is concerned. Nor is the implication very clear. But let us inquire what is the correct doctrine to be applied in such cases. The principle appears to be well stated in Cooley on Torts (2d ed.), 644, as follows:—" In general it is entirely competent for one having any particular work to be performed, to enter into an agreement with an independent contractor to take charge of and do the whole work, employing his own assistants, and being responsible only for the completion of the work as agreed. The exceptions to this statement are the following:—He must not contract for that the necessary or probable effect of which would be to injure others, and he cannot by any contract relieve himself of duties resting upon him as owner of real estate, not to do or suffer to be done upon it that which will constitute a nuisance, and therefore an invasion of the rights of others. Observing these rules, he may make contracts under which the contractor, for the time being, becomes an independent principal, whose servants are exclusively his, and not those of the employer he contracts with. And the contractor is in no such sense the servant of his employer as to give the other rights against the employer growing out of the contractor's negligence." And Judge COOLEY then quotes at length, in the text, the rules laid down by the late Chief Justice SEYMOUR, in an opinion prepared by him as arbitrator, in the case of *Lawrence* v. *Shipman*, reported in the supplement to 39 Conn., 586. And we think that, notwithstanding the almost infinite discussion of the subject in treatises and reported cases, it has nowhere been better, if indeed as well treated as in that opinion, in which a continuing liability in the contractee is declared to exist in four cases, notwithstanding the employment of an independent contractor to do the work. The first and second of these cases are thus stated:—" 1st. If a contractor

faithfully performs his contract, and a third person is injured by the contractor in the course of its due performance or by its result, the employer is liable, for he causes the precise act to be done which causes the injury. 2nd. If I employ a contractor to do a job of work for me, which in the progress of its execution obviously exposes others to unusual peril, I ought, I think, to be responsible, upon the same principle as in the last case, for I cause acts to be done which naturally expose others to injury." The first of these cases only, in which the ground of liability is not negligence either of the employer or of the contractor, since the injury is occasioned by the due performance or result of the work, was embraced by the court in its charge to the jury, because work " necessarily injuring the plaintiff's property " is equivalent to work which " faithfully performed," causes injury " in the course of its due performance or by its result." The second case should have been stated instead of the first, and the jury instructed that the defendant would be liable for negligence of the contractor, resulting in damage to the plaintiff's property, provided the work, in the progress of its execution, although it might have been performed without necessary injury, obviously and naturally exposed the plaintiff's property to probable injury or unusual peril; in this case, of course, resulting not from the adoption of the system or the location or plan of the sewers, but in the use of the ordinarily and reasonably to be contemplated means or agencies for the proposed construction.

We think, also, that the operation of blasting with dynamite is "intrinsically dangerous;" that the court should have taken judicial notice that it is so; and that the charge on this point was not correct, although it might have been if it had been complete, and in such completeness it had stated to the jury that, while the operation of blasting with dynamite was intrinsically dangerous and should be so regarded, yet whether, under all the facts in the case, the work contracted to be done for the construction of the sewers called in its natural, ordinary and reasonable execution for such use of such intrinsically dangerous agency and means

as would have obviously exposed the plaintiff's property to
probable injury therefrom, was for the jury to determine;
and that, if so, the defendant could not excuse itself from
liability for injury so occasioned, by reason of any contract
with another to perform the work. It is as sound a rule of
law as of morals, that when, in the natural course of things,
injurious consequences will arise to another from an act
which I cause to be done, unless means are adopted by
which such consequences may be prevented, I am bound, so
far as it lies within my power, to see to the doing of that which
is necessary to prevent the mischief. Failure to do so would
be culpable negligence on my part. *Bower* v. *Peate*, L. R.,
1 Queen's Bench Div., 321. Certain of the provisions in the
specifications, to which reference has been made, were ap-
parently inserted in recognition of this principle. But in
such cases it is not sufficient that the employer contracts
with another to use the care to prevent harm, which the haz-
ardous nature of the stipulated work requires. He is bound,
at his own peril, to see to it that such care is used. And he
is responsible, as for his own negligence, if it is not.

The record before us discloses that the plaintiff upon the
trial offered evidence to prove, and claimed to have proved,
that those constructing the sewers were excused by the de-
fendant from the stipulation in the contract requiring the
contractor to protect the plaintiff's gas pipes and mains, and
that no one was substituted to protect them, and that they
were not in fact protected except by the plaintiff under its
claimed agreement with the borough, as before stated. And
the plaintiff assigns as one of its reasons of appeal, the fail-
ure of the court to charge the jury as to the effect of excus-
ing the contractors from such obligation. We need not,
however, in view of what has already been said, touch upon
this matter, except to say that such excuse, if true in fact,
would be significant in connection with the alleged contract
between the plaintiff and the defendant, as set up in the
third count of the complaint.

The court also said to the jury:—"If you find from the
evidence that those contractors or either of them were un-

skillful and incompetent to perform the work assumed by them under the contract, and that the borough, knowing this, employed them to do the work, the borough would be negligent in knowingly employing such a person to do the work, and would be responsible for any negligence of such contractor in the same manner that the contractor would be liable for his own negligence." We think this language imposed upon the borough a too limited measure of liability; that it would be liable, as stated, not only in consequence of negligence, which would certainly be most gross, in knowingly employing incompetent contractors, but also in failing to exercise due and reasonable care to select such as were skillful and competent. And in this respect also, we think there was error.

The plaintiff claims further that the court in substance charged the jury that the construction of the sewer by the defendant was but a performance of its duty to maintain and keep its streets in repair, while it appeared that it was in fact done under a charter granted by the legislature, upon a petition presented by the defendant, which charter was duly accepted by the defendant before it went into effect. It was said that the court therein erred in stating as a fact that which was not so, thereby creating for the defendant a larger immunity from liability than was justified. It seems to us that this criticism is not well founded, for, waiving the question whether the plaintiff correctly characterizes the charge of the court, though it hardly seems to us that it does, or whether, if so, such charge is correct, it is not pretended that the court did not accurately state the plaintiff's claim for damages as being based upon the negligence of the defendant, as the plaintiff expressly claimed in that part of its case which related to the matter of pleading, which we have before considered, or that the court erred in adding " but the plaintiff, as you will understand, does not base its claim here upon any fault of the system, plan or location adopted by the defendant. It says that, assuming that to be proper, the defendant negligently constructed the sewers, and by its negligence caused the damage to recover which the action was

brought." For such negligence, it was not intimated in the charge of the court, or claimed upon the trial, nor can it be claimed, that there is any difference in the degree of liability, where the work is constructed under a special privilege or in the performance of a public and governmental duty. The immunity is no greater in one case than in the other. The statement complained of, therefore, was, as bearing upon the issues presented, entirely immaterial and unimportant and productive of no possible harm to the plaintiff.

Other minor objections to the charge were made by the plaintiff, but we think they are fairly covered by what has already been stated. At any rate they do not seem to require further mention, only to say, in view of the possibility of the questions again arising upon another trial, that in all other respects, except as noticed, the charge appears to us to be correct, and well adapted to the issues which were on trial.

There is error and a new trial is granted.

In this opinion the other judges concurred.